**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

APR 28 2026

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MARK ENTERPRISES CAR COMPANY, LLC, a Michigan limited liability company; DBA, Mark Mitsubishi; MARK ENTERPRISES CAR COMPANY II, LLC, an Arizona limited liability company; DBA, Mark Kia; MARK ENTERPRISES CAR COMPANY III, LLC, an Arizona limited liability company; DBA, Mark Mazda; MARK DUBOWY; DYLAN MOUGEL; JOSHUA SPENCER, | No. 25-2819 <br><br> D.C. No. 2:21-cv-01681-DLR <br><br> MEMORANDUM[*] |
| Plaintiffs - Appellants, | |
| v. | |
| DILSHER ALI, Special Agent, in his individual capacity; JAMES COPE; REGINALD GRIGSBY, | |
| Defendants - Appellees, | |
| and | |
| JAMES CONNELL, UNKNOWN PARTIES, | |
| Defendants. | |

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Appeal from the United States District Court
for the District of Arizona
Douglas L. Rayes, District Judge, Presiding

Argued and Submitted April 15, 2026
Phoenix, Arizona

Before: GRABER, HURWITZ, and DESAI, Circuit Judges.

Mark Enterprises Car Company and its owner-managers Mark Dubowy, Dylan Mougel, and Joshua Spencer (collectively, "Plaintiffs") brought this 42 U.S.C. § 1983 action against Special Agent Dilsher Ali and his supervisors in the Arizona Attorney General's Office (collectively, "Defendants") after three Mark Enterprises car dealerships were searched pursuant to a warrant. Plaintiffs alleged that the warrant authorized an overbroad search of digital devices, that Ali deceived the judge who issued the warrant, and that the supervisors failed to monitor Ali properly. The district court granted summary judgment to Defendants. We have jurisdiction under 28 U.S.C. § 1291, and reviewing de novo, *Williams v. City of Sparks*, 112 F.4th 635, 642 (9th Cir. 2024), we affirm.

1.      Defendants are entitled to qualified immunity "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018) (cleaned up). "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *Id.* at 63 (cleaned up). "[T]he fact that a neutral magistrate has issued a warrant is the clearest indication that the

officers acted in an objectively reasonable manner." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012).

Plaintiffs nonetheless argue that qualified immunity does not apply because Ali deceived the judge who issued the warrant and the warrant was "so facially deficient" that Ali could not "reasonably presume it to be valid." *United States v. Leon*, 468 U.S. 897, 923 (1984). We reject both arguments.

a. To establish judicial deception, Plaintiffs must show that Ali "deliberately or recklessly made false statements or omissions that were material to the finding of probable cause." *Ewing v. City of Stockton*, 588 F.3d 1218, 1223 (9th Cir. 2009) (cleaned up). Misrepresentations or omissions are not material if "the affidavit, once corrected and supplemented, establishes probable cause." *Id.* at 1224.

Plaintiffs argue that Ali's affidavit falsely suggested that Lobos and F-150s "are different vehicles and not visually and functionally identical in every material respect"; that Lobos "do[] not meet U.S. safety and emissions standards"; that Lobos and F-150s "are not covered by identical warranties"; and that vehicles sold to complaining customers "were not covered by the warranties, were equipped differently . . . or that any dispute with [those customers] was not completely resolved to the satisfaction of the customer." But the affidavit does not say that Plaintiffs failed to resolve customer complaints, only that complaints were made. It also never states that Lobos and F-150s are visually dissimilar. The affidavit does

assert that the two trucks differ in features, warranties, and compliance with safety and emissions standards, but those facts are not material to whether a vehicle was illegally imported. The alleged omissions—Ali's failure to state that Plaintiffs cooperated with investigators, that customer complaints were resolved, and that Lobos had warranties and satisfied safety and emissions standards—are also not material. *See Cameron v. Craig*, 713 F.3d 1012, 1019 (9th Cir. 2013).

Plaintiffs also challenge the affidavit's statements that their vehicles were "imported illegally," were "illegally relabeled," or had labels that were "counterfeit" or "replaced with fictitious English labels." But Plaintiffs argue only that they *thought* their trucks were properly imported, not that they actually were. *See id.* (rejecting argument that officers "had a duty to investigate [a plaintiff's] version of events before obtaining the search warrant"). And Ali based his assertion of illegal importation on information from law enforcement officers, industry experts, customers, and firsthand investigation of trucks sold by Plaintiffs. Plaintiffs argue that Ali misrepresented that the Attorney General had "received numerous consumer complaints" about Mark Enterprises because the affidavit mentioned only two complaints. "We do not read the affidavit in such a technical manner." *United States v. Vasquez*, 654 F.3d 880, 885 (9th Cir. 2011). Defendants were thus entitled to summary judgment on Plaintiffs' judicial deception claim.

b.    Qualified immunity applies unless the warrant was so facially deficient that reliance on it was objectively unreasonable under "clearly established" precedent. *See Messerschmidt*, 565 U.S. at 546 (cleaned up). "[T]he threshold for establishing this exception is a high one." *Id.* at 547. Officers receive qualified immunity as long as there is "a colorable argument" for probable cause and a "plausible connection between the place to be searched and objects to be seized and the criminal investigation." *Armstrong v. Asselin*, 734 F.3d 984, 993 (9th Cir. 2013) (cleaned up).

Even assuming *arguendo* that the warrant was overbroad, it was not so obviously deficient that Ali's reliance on it was unreasonable. *See Messerschmidt*, 565 U.S. at 548-49. The warrant incorporated a 25-page affidavit, which described, in detail, a multi-agency investigation of vehicle importation violations—dating back to 2015. The affidavit asserted probable cause based on customs records, sales invoices, Ali's firsthand observations, and conversations with law enforcement personnel, industry experts, and customers. It explained that digital devices often contain records of financial transactions and correspondence and provided some factual context for why such documents were relevant to the investigation. A reasonable officer could have concluded that there was "a colorable argument" for

probable cause and a "plausible connection" between Plaintiffs' devices and the investigation. *Armstrong*, 734 F.3d at 993 (cleaned up).[1]

The affidavit contained eight pages governing the "Handling of Digital Evidence," instructing that only documents relating to the offenses could be copied. *See, e.g.*, *United States v. Flores*, 802 F.3d 1028, 1044 (9th Cir. 2015) (approving similar data screening procedures). The affidavit explained that Plaintiffs' digital records could not be segregated in advance because digital evidence is often mixed with other records and unidentifiable by filename. *See id.* at 1044-45. An officer would not be "plainly incompetent" for concluding that the affidavit contained sufficient limitations. *See Wesby*, 583 U.S. at 63 (cleaned up).

Moreover, Plaintiffs identify no clearly established precedent suggesting that reliance on the warrant was unreasonable. *See Zorn v. Linton*, 146 S. Ct. 926, 930 (2026) (per curiam) ("[O]fficers receive qualified immunity unless they could have

---

[1] Plaintiffs assert that no reasonable officer could have determined there was probable cause to search all electronic devices used by Mark Enterprises based on its sale of "roughly 30 imported vehicles—less than one-half-of-one percent of its sales during the relevant period." But when a warrant authorizes a search of business records, the "number of files that could be scrutinized . . . is not determinative." *United States v. Hayes*, 794 F.2d 1348, 1355 (9th Cir. 1986).

Plaintiffs also insist that there was no probable cause that they committed importation crimes. But probable cause does not require showing criminality by the targets of a warrant. *See United States v. Adjani*, 452 F.3d 1140, 1146 (9th Cir. 2006) ("[W]e have never held that agents may establish probable cause to search only those items owned or possessed by the criminal suspect.").

6

read the relevant precedent beforehand and known that it proscribed their specific conduct." (cleaned up)).[2] This is not a case where "a simple glance" at the warrant "would have revealed a glaring deficiency that any reasonable police officer would have known was constitutionally fatal." *Groh v. Ramirez*, 540 U.S. 551, 564 (2004); *see also Messerschmidt*, 565 U.S. at 556 (applying qualified immunity where "any arguable defect would have become apparent only upon a close parsing of the warrant application").

2.      Supervisors cannot be liable "when the subordinate officers have not been shown to have violated a clearly established right." *Puente v. City of Phoenix*, 123 F.4th 1035, 1064 (9th Cir. 2024) (cleaned up). Because we find that Ali did not violate a clearly established right, we also conclude that the district court properly granted summary judgment to his supervisors. *See id.*

**AFFIRMED.**

---

[2]      Plaintiffs argue that officers violated the "permeated with fraud" doctrine, but Ali's affidavit explained why Plaintiffs' business records could not be segregated. *See United States v. Offs. Known as 50 State Distrib. Co.*, 708 F.2d 1371, 1374 (9th Cir. 1983).